IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHESTER STABENOW,

                    Plaintiff,

          v.

CITY OF EAU CLAIRE, MICHAEL MCCLAIN,              OPINION and ORDER
WAYNE BJORKMAN, ELLEN SCHROEDER,
BREANNA GASPER, MITCHELL HUNSLEY,                  19-cv-1058-jdp
BONAFIDE RECOVERY AND TRANSPORT, LLC,
MICHAEL MATIJEVIC, and CARRIE BERNITT,

                    Defendants.

Plaintiff Chester Stabenow was driving home from work late in the evening of March 14, 2017. A half hour later, he was on the ground, handcuffed, bleeding, and waiting for an ambulance after being punched at least five times by an Eau Claire police officer.

Stabenow contends that each of the defendants shares responsibility for his injuries. He says that employees of Bonafide Recovery and Transport LLC, chased him at high speeds in an attempt to repossess the truck he was driving and later called the police, falsely alleging that members of Stabenow's household threatened the employees with violence. He also says that officers who were called to the scene grabbed him without justification, slammed his head against the trunk of a car, punched him in the face, threw him on the ground, kneeled on his back so that he couldn't breathe, and held his arms behind his back so tightly that it felt like they would break.

Stabenow raises claims for excessive force, false arrest, and false imprisonment against the officers, a variety of state-law claims against all defendants, and a claim for municipal liability against the City of Eau Claire. The defendants move for summary judgment on all

claims in two groups: (1) defendants City of Eau Claire, Michael McClain, Wayne Bjorkman, Ellen Schroeder, Brenna Gasper, and Mitchell Hunsley ("the city defendants"), Dkt. 48; and (2) defendants Bonafide Recovery and Transport, LLC, Michael Matijevic, and Carrie Bernitt ("the private defendants"), Dkt. 63.

The court will grant summary judgment on many of Stabenow's claims, for reasons explained in this opinion.

But the court will mostly deny summary judgment on Stabenow's claim for excessive force against the individual officers because there are genuine disputes of material fact that require resolution by a jury. *See* Fed. R. Civ. P. 56(a). The officers say that they used force because Stabenow was resisting, and it appeared as though he was trying to strike them. But Stabenow denies resisting, and the court must accept Stabenow's version of the events for the purpose of defendants' motion for summary judgment.

The court will also deny summary judgment on Stabenow's claim for negligence against Bonafide Recovery and its employees. The private defendants contend that any harm to Stabenow is too remote from their actions to support a claim, but that is an issue generally reserved until after the jury renders its verdict.

UNDISPUTED FACTS

The following facts are undisputed, unless otherwise noted.

Sometime before 11:00 p.m. on March 14, 2017, in Eau Claire, Wisconsin, Stabenow was driving home from work in a Dodge Ram truck owned by his partner, Marlene Gums. Stabenow noticed that he was being followed by a tow truck. That truck was owned by defendant Bona Fide Recovery. Defendant Michael Matijevic was driving the tow truck;

defendant Carrie Bernitt was a passenger. Both Matijevic and Bernitt were employees of Bona Fide Recovery. They were under instructions to repossess the truck that Stabenow was driving, but they didn't have a court order, so they didn't have authority to take the truck without the owner's permission. Instead, they were permitted to request a "voluntary surrender" of the vehicle.

No matter how fast or how slow Stabenow drove, or where Stabenow turned, the tow truck stayed with him, even when Stabenow went over the speed limit or went through a stop sign. Stabenow says that the tow truck was driving "aggressively," staying very close to the back of his vehicle. This frightened Stabenow because it was dark out and he didn't know what the occupants of the tow truck might do to him.

Bernitt called the police and informed the dispatcher that they were following a Dodge Ram that they intended to repossess. Bernitt said that the vehicle was driving at a high rate of speed and had run a stop sign.

Matijevic and Bernitt continued following Stabenow for 25 minutes, until he reached home. After he pulled into his driveway, Stabenow got out of the truck and walked quickly to the front door. Gums and some of Stabenow and Gums's adult children came out of the house as the tow truck was backing into the driveway and hooking up the Dodge Ram to the tow truck. Gums knocked on the passenger-side window of the tow truck and asked Bernitt to roll down her window so they could speak. (Gums is partially deaf.) Bernitt refused to roll down the window.

Bernitt was still on the phone with the police dispatcher. She reported the following information to the dispatcher, who relayed it to officers who were called to the scene: the repossession company had followed the vehicle to a residence; suspects from the residence were

striking the vehicle; and the suspects were threatening to retrieve firearms, knives, baseball bats, and a large dog. Stabenow denies that he or anyone else struck the vehicle or threatened anyone.

Robert Schreier (not a defendant) was the first officer to arrive at Stabenow's residence. Schreier's dash cam was pointed at the driveway from the curb, and it showed the events over the next few minutes. And the conversation between Stabenow and various officers was captured by audio recordings from devices worn by the officers.

The scene was quiet when Schreier arrived. No one was standing near the tow truck or saying anything to the occupants of the tow truck. Stabenow and Gums were removing items from the Dodge Ram. Schreier observed that neither Stabenow nor Gums had weapons in their hands. Schreier began speaking to Gums, who was yelling about the repossession.

Michael Cullen (also not a defendant) and defendant Wayne Bjorkman arrived next. They walked past Stabenow and began speaking to Stabenow and Gums's adult children. Stabenow continued removing items from the truck as Bjorkman and Schreier stood next to him.

Defendants Michael McClain and Ellen Schroeder arrived on the scene. They walked past Stabenow and did not attempt to speak to him.

Stabenow closed the truck's door and started listening to Gums's conversation with Bjorkman and Schreier. He put his hands in his coat pockets because it was cold outside, and he didn't have any gloves with him.

About two minutes after she arrived, Schroeder walked up to Stabenow and asked him who he was. When he answered, "Chester," she asked him if he had ID on him. Stabenow started reaching into his back pocket to take out his wallet, but then he said, "I could just tell

you my name . . . Chester Harold Stabenow." Schroeder responded, "ok." Stabenow then said, "I don't know why you need my ID, but . . . I ain't got nothing in my pockets, it's cold." (Schroeder says that she told Stabenow not to put his hands in his pockets, but that statement is not audible on the recording.) Schroeder responded, "I know."

McClain started speaking to Stabenow, asking him whether he lived at the house. When Stabenow said "yes," McClain said, "Get your ID out right now." Stabenow complied, removing his wallet from his back pocket and handing his ID to McClain. When Stabenow put his ID back into his pocket, McClain said, "Keep your hands out of your pocket."

Stabenow told Schroeder and McClain that his hands were cold and asked if he could put on some gloves. Schroeder responded, "You're just gonna have to wait until we get this figured out." Bjorkman and Stabenow then had the following exchange:

> Bjorkman: Do you have anything in your pockets that you're not supposed to have? Are there any guns, knives, anything like that?
>
> Chester: Well, I—
>
> Bjorkman: Do you have any guns, knives—
>
> Chester: Yes, I got a knife, but I—I could have a knife on me, but—
>
> Bjorkman: Where's the knife at?

Stabenow then asked, "Here, you want it?" and he reached his right hand into his pants pocket. Stabenow says that he did that because he believed that Bjorkman wanted him to turn over the knife.

Stabenow removed his right hand from his pocket, without holding the knife. At about the same time, Bjorkman grabbed Stabenow's left arm and wrist. A moment later, Schroeder

and McClain grabbed Stabenow's right arm. Bjorkman yelled, "Don't reach into your pocket. That's a good way to end up on the ground."

Much of what happened next is disputed, and the dash cam video is too far away from the scene to resolve these disputes. But the following facts are undisputed: Schroeder and McCain held Stabenow's right arm behind his back with his wrist in a compliance hold. Bjorkman, Schroeder, and McClain dragged Stabenow to the trunk of another car that was parked in the driveway and slammed him into the trunk while holding both of his arms behind his back. Stabenow's chest hit the spoiler and his head hit the trunk hard enough that it left a dent. Another officer, defendant Mitchell Hunsley, assisted Bjorkman in holding Stabenow's left arm. McClain punched Stabenow in the face five or six times. Stabenow screamed in pain; his partial dentures came out of his mouth and broke into multiple pieces. The officers took Stabenow to the ground and continued holding his arms behind his back. After they put pressure on his back, Stabenow said, "I can't breathe, I can't breathe." Bjorkman and another officer, Breanna Gasper, held Stabenow's legs while Stabenow was handcuffed. As the officers held Stabenow's arms behind his back, he said, "You're breaking my arm."

Schroeder placed her knee and shin on Stabenow's shoulder blades. Schroeder removed a folded knife from Stabenow's pants pocket.

After a few minutes, officers helped Stabenow to stand. They asked him whether he needed medical attention. Stabenow said that he did, so an ambulance was called. Officers walked Stabenow over to the curb, sat him down on the curb, and informed him that he was under arrest for disorderly conduct and resisting an officer.

Stabenow had multiple injuries to his face and bruising on his lips and chin. His mouth was full of blood. Parts of his gums were hanging from inside his mouth. Eventually, the

ambulance arrived, and Stabenow was taken to the hospital. After hospital staff treated him, he was released from the hospital, and officers transported him to the jail. The charges against Stabenow were later dropped.

## I. CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Excessive force

Stabenow doesn't clearly identify the precise conduct that he is challenging as excessive, but the court understands from Stabenow's brief and his expert's report that he is challenging three types of conduct: (1) the initial seizure; (2) McClain's punching him while other officers failed to intervene; and (3) other force used while restraining him.[1]

The basic question for an excessive force claim under the Fourth Amendment is whether the officer used "greater force than was reasonably necessary." *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016). This determination is made from the perspective of a reasonable officer in light of the totality of the circumstances known to the officer, without regard to the officer's intent or his subjective beliefs. *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472–73 (7th Cir. 2015); *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). In assessing reasonableness, relevant factors include the seriousness and immediacy of any threat posed by

---

[1] The closest Stabenow comes to identifying the conduct he is challenging is in a sentence in the section of his brief devoted to qualified immunity: "[A] jury reasonably could conclude [that] the Defendant officers . . . used excessive force and acted unreasonably by grabbing [Stabenow], slamming him on the hood of the trunk of the car in the driveway, McClain punching him five times in the face while three or four other officers held both his arms, and then throwing him to the ground, kneeling on him so he could not breathe, and pulling on his arms so hard Stabenow begged the officers not to break his arms." Dkt. 83, at 39.

the plaintiff, the severity of any suspected crime, and the extent of the plaintiff's resistance or interference with an officer's duties. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

The city defendants seek dismissal of Stabenow's excessive force claim on two grounds. First, they say that the undisputed facts show that no reasonable jury could find that any officer used excessive force. Second, defendants say that they are entitled to qualified immunity. Under that doctrine, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott*, 705 F.3d at 725. Law is clearly established on an excessive force claim if: (1) there is a "closely analogous case" holding that the specific type of force used by the defendants is excessive; or (2) "a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question." *Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021) (internal quotation marks and alterations omitted).

### 1. Initial seizure

The relevant facts leading up to the seizure of Stabenow aren't disputed. *See Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009) (when material facts aren't disputed, court may grant summary judgment on excessive force claim if facts show whether defendants' conduct was reasonable). Put simply, the question is whether it was reasonable for Bjorkman, McClain, and Schroeder to seize Stabenow when he reached into his pocket to retrieve his knife. The court concludes that it was reasonable. And, because it was a potentially dangerous situation calling for a quick decision, the defendants are entitled to qualified immunity on this part of Stabenow's excessive force claim.

At the time defendants grabbed Stabenow, they had to make a quick decision about a suspect within arm's reach who informed the officers that he had a knife and then reached into

his pocket to retrieve it after being told not to put his hands in his pockets. It is in situations like that, in which officers are required to act quickly, that the Supreme Court and the Court of Appeals for the Seventh Circuit have emphasized the need for deference to officers. *See, e.g.,* *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014); *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 989–90 (7th Cir. 2021). A person reaching for a knife while he is very near officers presents a potentially dangerous situation justifying a quick response. The court isn't aware of any authority suggesting that a similar use of force violates the Fourth Amendment, and Stabenow has cited none. The court of appeals has upheld seizures under the Fourth Amendment in situations presenting less of a threat. *See Cibulka*, 992 F.3d at 640 (officers entitled to grab plaintiff who was drunk and in danger of falling and hurting someone).

Stabenow argues that defendants' conduct wasn't reasonable because defendants should not have viewed Stabenow as threatening at the moment they grabbed him. Stabenow says that he wasn't a threat because he had not been acting aggressively since police arrived on the scene. That is a fair point. Video shows Stabenow calmly removing items from the Dodge Ram for several minutes without threatening or even speaking to any of the officers. Defendants don't point to any aggressive conduct by Stabenow before he reached for his knife. And even when Stabenow said that he had a knife, his tone of voice wasn't threatening. A reasonable jury could find that Stabenow's act of reaching for his knife was simply an attempt to be cooperative by turning over an item that officers didn't want him to have. But the question on an excessive force claim isn't whether the plaintiff's motives were benign or his actions could reasonably be interpreted as nonthreatening. Rather, the question is whether the officers' conduct was reasonable at the time, without the benefit of hindsight. *See Graham v. Connor,*

490 U.S. 386, 396 (1989). The undisputed evidence shows that defendants acted reasonably in their initial seizure of Stabenow.

When Stabenow reached into his pocket, defendants didn't have the luxury of reflecting on Stabenow's motives based on his conduct from the previous few minutes. Although Stabenow may not have been acting in a threatening manner in that instant, defendants had been informed that individuals on the scene had been making threats about knives and other weapons. Defendants had no way of knowing at the time whether Stabenow had been involved in making such threats or whether Stabenow was just trying to be helpful. Under those circumstances, grabbing Stabenow's arms to prevent him from retrieving his knife was reasonable under the Fourth Amendment.

Stabenow's counter-arguments are not persuasive. He says that he had removed his hand from his pocket *without* the knife in his hand *before* the officers grabbed him, so they should have realized then that he wasn't a threat. But, as shown by the video, the time between Stabenow's announcement that he had a knife and defendants' seizure was only a few seconds. By the time Stabenow removed his hand from his pocket, officers were already moving to restrain him. The court isn't persuaded that the Fourth Amendment required defendants to immediately pause and reassess the situation to determine whether Stabenow remained a threat.

Stabenow also says that defendants acted unreasonably because they had alternatives to grabbing him. Some of the alternatives he identifies, such as handcuffing Stabenow while they frisked him, Dkt. 83, at 14, or drawing their guns on him, Dkt. 84-15, at 24, also would involve significant uses of force, and Stabenow doesn't explain why those alternatives would have been preferable to grabbing Stabenow. Stabenow identifies two other alternatives that

defendants could have chosen at the time they grabbed him: (1) give Stabenow verbal commands not to reach for the knife; and (2) create distance between themselves and Stabenow. But it isn't enough for Stabenow to identify alternative courses of action. Officers don't have to show that they used the least restrictive means in protecting themselves and others. Rather, courts "give considerable leeway to law enforcement officers' assessments regarding the degree of force appropriate in dangerous situations." *Williams*, 797 F.3d at 473; *see also Dockery v. Blackburn*, 911 F.3d 458, 468–69 (7th Cir. 2018) ("Even if the officers misconstrued [the plaintiff's] actions or misjudged the amount of force needed to subdue him, qualified immunity protects officers from mistakes in judgment of this sort.").

Stabenow's other proposed alternatives relate to conduct leading up to the use of force. For example, Stabenow says that defendants should have assessed whether Stabenow had weapons or otherwise posed a threat *before* they approached him, so that they could have avoided the potential danger of being next to an armed suspect. This is another fair point. Defendants don't explain why they all but ignored Stabenow when they came on the scene, only to approach and confront him several minutes later without knowing how dangerous he might be. And Bjorkman doesn't explain why he asked Stabenow, "Where's the knife at?" instead of immediately telling Stabenow not to reach for the knife. Defendants' instructions to Stabenow were confusing and inconsistent, which contributed to the escalation of the incident.

But, as defendants point out, the court of appeals has rejected the view that a use of force is unreasonable simply because an officer's earlier mistakes helped create a situation that required a use of force. *See Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 698 (7th Cir. 2020) ("The officers might have made mistakes, and those mistakes might have provoked [the decedent's] violent resistance. Even if so, however, it does not follow that their actions violated

the Fourth Amendment."). The court said that an officer's earlier conduct could make a use of force unreasonable if "the officers acted so far outside the bounds of reasonable behavior" that the use of force "was almost entirely a result of the officers' actions." *Id.* Defendants may have contributed to the escalation of incident, but it would not be fair to say that their use of force was almost entirely a result of their own actions.

There are legitimate bases for criticizing defendants' conduct leading up to their seizure of Stabenow. But the undisputed evidence shows that the seizure itself was a reasonable reaction to the circumstances of the moment. And Stabenow has cited no authority for the proposition that the Fourth Amendment prohibits an officer from using some physical force when to restrain an individual who is reaching for a knife. Significant authority points in the other direction.[2] The court concludes that the seizure of Stabenow, even if it had been an unreasonable use of force, was not a violation of any clearly established right. The defendants are thus entitled to qualified immunity.

The court will grant the city defendants' motion for summary judgment on the issue whether Bjorkman, Schroeder, and McClain's initial seizure of Stabenow violated the Fourth Amendment.

---

[2] *See Hale v. City of Biloxi, Mississippi,* 731 F. App'x 259, 262 (5th Cir. 2018) (officers entitled to qualified immunity when they shot plaintiff after he put his hand in his pocket after being instructed not to); *Wilson v. City of Lafayette,* 510 F. App'x 775, 776 (10th Cir. 2013) (Gorsuch, J.) (officer entitled to qualified immunity when he used taser on suspect reaching for his pocket after suspect was told not to do so); *Anderson v. Russell,* 247 F.3d 125, 132 (4th Cir. 2001) (use of force justified when officer reasonably believed that suspect was reaching for a weapon in his pocket); *Elliott v. City of Pleasant Grove, Alabama,* No. 2:16-CV-00631-JHE, 2018 WL 1442863, at *6 (N.D. Ala. Mar. 22, 2018) ("[The plaintiff's] act of reaching toward his pistol justified Officer Bagwell using a reasonable amount of force to restrain him.").

## 2. Punches

Stabenow contends that McClain used excessive force by punching him in the face at least five times and that the other individual defendants may be held liable for failing to intervene. The court will deny defendants' summary judgment on both types of claims.

### a. Claim against McClain

It is undisputed that McClain punched Stabenow at least five times while Bjorkman, Schroeder, and Hunsley held Stabenow's arms behind his back. (McClain calls his actions "closed-fist strikes." Dkt. 57, ¶ 40.). McClain says that punching Stabenow in the face was reasonable because he was still trying to reach for his knife, he was attempting to pull away from the officers, his right elbow "appeared to swing" at McClain's face, he "appeared to pull his right arm away from [McClain] while he began to swing his right closed fist upward toward [McClain's] head and face," and "[t]he position of the vehicle in the driveway of the residence on scene prevented effective, active countermeasures with [McClain's] feet, legs, or knees." Dkt. 57.

Defendants don't persuasively explain why repeated strikes to the face would have been necessary even if Stabenow had continued to resist, given that Stabenow was already restrained by multiple officers. In any event, McClain is not entitled to summary judgment on this part of the excessive force claim because Stabenow denies McClain's allegations. Specifically, Stabenow denies resisting, trying to pull away, making a fist, or trying to swing his arm or elbow at the officers. Dkt. 99, ¶¶ 142–144, 146, 150. Although the incident was recorded by video, the distance between the camera and the parties is simply too great to allow the court

to decide as a matter of law which party's version is correct. So for the purpose of defendants' motion for summary judgment, the court must accept Stabenow's version.[3]

It is clearly established that "significant force is unreasonable after a suspect has stopped resisting." *Alicea v. Thomas*, 815 F.3d 283, 288 89 (7th Cir. 2016); *see also Johnson v. Rogers*, 944 F.3d 966, 969–70 (7th Cir. 2019); *Miller v. Gonzalez*, 761 F.3d at 829 (7th Cir. 2014); *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003). Because it is undisputed that McClain used significant force against Stabenow, and Stabenow alleges that he wasn't resisting at the time, the court will deny summary judgment on Stabenow's claim that McClain used excessive force by punching him.

### b. Claim against Bjorkman, Schroeder, and Hunsley

Stabenow also contends that the other individual defendants may be held liable under the Fourth Amendment for not trying to stop McClain from punching him. Stabenow's complaint doesn't specify which defendants he is suing on a failure-to-intervene theory or for which acts he is suing them. But the only issue related to a failure to intervene that Stabenow discusses in his summary judgment brief is the failure to stop McClain from punching him. And Stabenow has no adduced no evidence that any defendants other those holding him at the time (Bjorkman, Schroeder, and Hunsley) could have intervened. So the court will limit this claim to an alleged failure by Bjorkman, Schroeder, and Hunsley to intervene when McClain punched Stabenow.

---

[3] The city defendants cite the testimony of Shakayla Smith, the girlfriend of one of Stabenow's children, who said that she saw Stabenow's shoulders "raising up" while the officers were restraining him. Dkt. 96 (Smith Dep. 36:6). But the city defendants' reliance on that testimony is misplaced, for two reasons. First, Stabenow isn't bound by Smith's testimony. Second, the city defendants don't explain why the amount of forced they used would be justified simply because Stabenow raised his shoulders.

A defendant may be held liable for failing to stop another officer's use of excessive force if the defendant knew that the other officer was violating the plaintiff's constitutional rights and the defendant had a "realistic opportunity" to prevent the violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). "A realistic opportunity means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014) (internal quotation marks omitted).

The question is a close one, but the court will allow the failure-to-intervene claim to proceed to trial. The video shows that McClain's first and last punch were only a few seconds apart, so the other officers' ability to intervene was limited. But circuit law doesn't require Stabenow to show that the officers had the ability to *physically* stop McClain. Rather, all that Stabenow must show is that they had the ability to tell McClain to stop. *See id.* Even a few seconds is enough to do that, as this court has held in other cases. *See Est. of DiPiazza v. City of Madison*, No. 16-cv-60-wmc, 2017 WL 1337313, at *10 (W.D. Wis. Apr. 11, 2017) (denying summary judgment on failure-to-intervene claim when defendant had "a few seconds" to tell other officer not to shoot the decedent); *Pullen v. House*, 88 F. Supp. 3d 927, 944–45 (W.D. Wis. 2015) (denying summary judgment on failure-to-intervene claim when defendant saw other officer remove her taser before deploying it). And "[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997).

In this case, a reasonable jury could find that the other officers knew that McClain's conduct was excessive and that they could have taken some action to stop McClain, but they

failed to do so. So the court will deny the city defendants' motion for summary judgment on Stabenow's failure-to-intervene claim.

### 3. Other uses of force

The court also understands Stabenow to contend that officers used excessive force by slamming him on the hood of the trunk, throwing him to the ground, kneeling on him so he could not breathe, and pulling on his arms so hard that it felt like the officers were breaking his arms. The court will deny defendants' summary judgment motion on these claims for essentially the same reason as Stabenow's claim regarding McClain's punches. Defendants justify these actions on the ground that Stabenow was resisting and acting aggressively, but Stabenow denies this. Defendants all but concede that there are genuine issues of material fact by failing to discuss these uses of force in their reply brief.

Stabenow doesn't clearly identify which uses of force he is attributing to which parties, but the undisputed facts themselves make it clear that Bjorkman, Schroeder, McClain, and Hunsley were involved in slamming Stabenow into the hood of trunk, the same four officers were involved in bringing Stabenow to the ground, and all of the five named officers were involved in restraining Stabenow on the ground. So the court will allow Stabenow to proceed to trial on those claims.

## B. False arrest and false imprisonment

Stabenow contends that the officer defendants violated the Fourth Amendment by detaining and arresting him. Defendants seek summary judgment for these claims on the ground that there was no Fourth Amendment violation because the officers had probable cause that Stabenow was engaging in disorderly conduct under Wis. Stat. § 947.01 and obstructing or resisting an officer under Wis. Stat. § 946.41. *See Cibulka*, 992 F.3d at 638 (probable cause

is an absolute defense to a false-arrest claim); *Brown v. Dart*, 876 F.3d 939, 941 (7th Cir. 2017) (probable cause is an absolute defense to a false-imprisonment claim).[4] Alternatively, they contend that they are entitled to qualified immunity on the question whether they had probable cause. A defendant is entitled to qualified immunity if the undisputed facts show that "a reasonable officer could have mistakenly believed that probable cause existed." *Cibulka*, 992 F.3d at 638 (internal quotation marks omitted). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (internal quotation marks and alterations omitted).

Much of the conduct that defendants rely on to support probable cause is disputed. But the court will grant defendants' motion for summary judgment on this claim for reasons similar to the claim challenging the initial seizure. Specifically, Stabenow reached for his knife after officers had already told him at least once not to put his hands in his pockets. That conduct gave the officers probable cause to believe that Stabenow was "knowingly resist[ing] or obstruct[ing] an officer while such officer is doing any act in an official capacity and with lawful authority." Wis. Stat. § 946.41. At the least, Stabenow cites no authority suggesting that it was clearly established that his conduct didn't justify an arrest under § 946.41. *See United States v. Bogan*, No. 17-cr-128, 2017 WL 9485688, at *2 (E.D. Wis. Sept. 26, 2017) (failure to

---

[4] In their reply brief, the city defendants also contend that the officers had probable cause to believe that Stabenow had been driving at excessive speeds, but that contention is forfeited for the purpose of summary judgment because it wasn't raised in defendants' opening brief.

comply with lawful order provided probable cause for § 946.41 violation); *Prip v. Erwin*, No. 14-cv-552-wmc, 2015 WL 4394526, at *5 (W.D. Wis. July 16, 2015) (same).

Stabenow says that the officers didn't have lawful authority to tell him to keep his hands out of his pockets, so they didn't have probable cause to conclude that he was violating § 946.41 by failing to comply with that order. This contention is based on Stabenow's view that "it is reasonable to infer that the city Defendants did not reasonably believe Stabenow had committed a crime or was about to commit a crime" when they told him to keep his hands out of his pockets. Dkt. 83, at 57.

Stabenow's contention rests on multiple incorrect assumptions. First, what defendants actually believed is irrelevant to a determination whether they complied with the Fourth Amendment. "[T]he probable cause inquiry is an objective one; the subjective motivations of the officer do not invalidate a search otherwise supported by probable cause." *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010). Second, an officer doesn't always need probable cause or even reasonable suspicion to justify a "marginal" intrusion on individual liberty when the officer's conduct furthers a "governmental interest in conducting legitimate police activities safely and free from interference." *United States v. Howard*, 729 F.3d 655, 659 (7th Cir. 2013). For example, in some circumstances "it may be reasonable for police to detain people not suspected of criminal activity themselves" when the officers are investigating potential criminal behavior of others. *Id.*

In any event, the officers needed no more than reasonable suspicion that Stabenow had committed a crime to justify a brief detention and questioning. *See D.Z. v. Buell*, 796 F.3d 749, 754 (7th Cir. 2015). Reasonable suspicion was provided by Bernitt, who told the police that multiple suspects from the residence were striking the tow truck and that the suspects were

threatening to retrieve firearms, knives, baseball bats, and a large dog. Those statements were more than enough to provide reasonable suspicion of disorderly conduct, even if Bernitt didn't identify Stabenow specifically, because Stabenow was found at the scene of the alleged conduct. Stabenow denies Bernitt's statements, but he points to no evidence that the officers had reason to doubt Bernitt's allegations at the time the officers confronted Stabenow.

The court will grant the city defendants' motion for summary judgment on the false arrest and false imprisonment claim.

## C. Municipal liability

Stabenow contends that the City of Eau Claire may be held liable for the officers' alleged use of excessive force. There are multiple ways that a plaintiff may prevail on a claim under § 1983 for municipal liability. For example, a plaintiff may show that the constitutional violation was caused by an official policy of the municipality, that there was a custom or practice that served as the equivalent of a policy, or that the constitutional violation was committed by an official with final policy-making authority. *See Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Stabenow doesn't clearly identify in his brief what his theory is. But he relies exclusively on *J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020), and *Estate of Robinson ex rel. Irwin v. City of Madison, Wisconsin*, No. 15-cv-502-jdp, 2017 WL 564682 (W.D. Wis. Feb. 13, 2017). Both cases involved a theory of municipal liability called "deliberate indifference," which requires the plaintiff to show that it was "known or obvious" that constitutional violations of the type plaintiff alleges would occur. In *J.K.J.*, the court held that "gaps" in county policies supported an allegation that the county was deliberately indifferent to a risk of inmate sexual assault. 960 F.3d at 379–80. In *Estate of Robinson*, the court rejected a claim that the city was deliberately

indifferent to a widespread practice of faulty investigations of police misconduct. No. 15-cv-502-jdp, 2017 WL 564682, at *21.

Stabenow doesn't identify any gaps in city policies that caused the alleged excessive force in this case. Instead, his claim seems to more closely resemble the one raised in *Estate of Robinson*. Specifically, he contends that the following evidence is sufficient to allow a reasonable jury to find that the city was deliberately indifferent in this case:

- there were 63 complaints about excessive force filed with the city between 1994 and 2020;

- the city found that each complaint was unfounded or unsubstantiated, which "sent a message" to officers that the city tolerated excessive force;

- the district attorney dismissed all charges against Stabenow, after "hint[ing]" to McClain that the use of force was "borderline excessive,"

- the city failed to conduct an administrative review of the officers' conduct for three years; and

- the city found that the officers' conduct was "within the guidelines" of the city's policies and procedures.

None of this evidence creates a genuine dispute of material fact on the municipal liability claim. The complaints do not support a claim against the city because Stabenow provides no factual context for them. The court of appeals explained this long ago: "[T]he number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all. That they filed complaints does not indicate that the policies that [the plaintiff] alleges exist do in fact exist and did contribute to his injury." *Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985).

To support a claim against the city, Stabenow would need to provide details about the complaints, showing that they had merit and that any past uses of excessive force were sufficiently similar to what happened in this case to provide the city with notice of a specific

problem. *See id; see also Connick v. Thompson*, 563 U.S. 51 (2011) (previous constitutional violations didn't provide notice to municipality for purposes of § 1983 liability because they weren't sufficiently similar to plaintiff's alleged constitutional violation)*; Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (previous acts didn't support municipal liability claim when plaintiff failed to provide context for those acts); *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (previous alleged instances of retaliation not probative without evidence that previous allegations were meritorious and other evidence showing the factual context of those allegations). Stabenow failed to provide to such evidence.

The rest of Stabenow's evidence is unhelpful because it relates to events that occurred *after* the alleged constitutional violations in this case. As this court explained in *Estate of Robinson*, after-the-fact events can't provide notice to a municipality. 2017 WL 564682, at *22.

Stabenow tries to get around *Estate of Robinson* by pointing to the city's finding that the officers' conduct didn't violate city policy, contending that the finding is proof that city policy was a cause of the alleged excessive force. But courts have rejected that contention too. "[An] after-the-fact approval of [police conduct], which did not itself cause or continue a harm against [the plaintiff], [is] insufficient to establish [a] *Monell* claim." *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013). *Accord Waters v. Madson,* 921 F.3d 725, 743 (8th Cir. 2019). Stabenow points to nothing in the city's decision that would support a finding that the city has a policy of using excessive force. Rather, a review of the decision shows that the city found that Stabenow was actively resisting while he was restrained, and that is what justified the officers' use of force. *See* Dkt. 59-1, at 17–24. Although the city did cite various policies and procedures throughout the decision, Stabenow doesn't challenge any of those policies in his brief.

Stabenow has not adduced any evidence that would allow a reasonable jury to find that the alleged constitutional violations in this case were the result of "acts [that] may fairly be said to represent official policy" of the city. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978). So the court will grant defendants' motion for summary judgment on the municipal liability claim.

## D.  State-law claims

Stabenow asserted several state-law claims against the city defendants in his complaint, including assault and battery, malicious prosecution, abuse of process, negligent and intentional misrepresentation, negligent and intentional infliction of emotional distress, and "indemnification." The city defendants move for summary judgment on all of these claims, contending both that Stabenow failed to comply with the notice-of-claim statute, Wis. Stat. § 893.80(1d), and that each of the claims fails on the merits. Stabenow doesn't respond to any of the city defendants' arguments on the merits, with the exception of the arguments related to the assault and battery claim. So Stabenow has forfeited those other claims.

As for the assault and battery claim, both sides' arguments on the merits simply refer back to their arguments on the excessive force claims. The court is denying the city defendants' summary judgment motion on some aspects of the excessive force claim, so the dispositive question is whether Stabenow complied with the notice-of-claim statute.

Section 893.80(1d) says that "no action may be brought or maintained" against a city or city employee acting within the scope of his or her employment unless three things occur. First, the plaintiff must serve "written notice of the circumstances of the claim" within "120 days after the happening of the event giving rise to the claim." Wis. Stat. § 893.80(1d)(a). Second, the plaintiff must present a "claim containing the address of the claimant and an

itemized statement of the relief sought" to "the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant." Wis. Stat. § 893.80(1d)(b). Third, the claim must be disallowed. *Id.* Failure to comply with either § 893.80(1d)(a) or (1d)(b) requires dismissal of the claim. *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 301, 588 N.W.2d 19 (1999); *Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 530 N.W.2d 16 (Ct. App. 1995).

Stabenow admits in his opposition brief that he didn't file a notice of claim, but he says that he didn't have to, pointing to a different part of Wis. Stat. § 893.80(1d)(a): "Failure to give the requisite notice shall not bar action on the claim if [the defendant] had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant." Stabenow says that the city had actual notice because the city's officers were "personally involved" in the relevant events and they were aware that he "received emergency medical care and that his dentures were broken." Dkt. 83, at 40–41. He also says that the complaint he filed in this lawsuit satisfies § 893.80(1d)(b).

Knowledge of the relevant events isn't enough to qualify as actual notice under § 893.80(1d)(a). Rather, the defendants must have notice of "the claim." *See Elandt v. Waupaca Cty.*, 2020 WI App 18, ¶ 15, 2020 WL 718283 (nonprecedential). Among other things, this means that the defendants must have notice of the "specific relief" that the plaintiff is requesting. *Smith v. Wilson*, No. 10-cv-62-wmc, 2011 WL 13135631, at *3 (W.D. Wis. Mar. 7, 2011). "Absent this information, the [defendants have] no opportunity to settle the claims before [the] lawsuit [is] filed or to budget for settlement or litigation—the two key purposes of the notice of claim requirement." *Id.* Stabenow cites no authority undermining *Smith*, and he

cites no evidence that he gave defendants notice of the relief he was seeking, such as punitive damages and damages for emotional distress.

Stabenow also failed to comply with Wis. Stat. § 893.80(1d)(b). It is well established that the notice must be served and disallowed *before* the lawsuit is filed. *See Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 911 (7th Cir. 1985); *Zinke v. Milwaukee Transp. Servs., Inc.*, 99 Wis. 2d 506, 513, 299 N.W.2d 600, 604 (Ct. App. 1980). So the complaint itself cannot satisfy the requirements in § 893.80(1d)(b).

The court will grant the city defendants' motion for summary judgment on the state-law claims.

## II. PRIVATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Stabenow asserted many of the same state-law claims in his complaint against defendants Bonafide Recovery, Matijevic, and Bernitt as he did against the city defendants. He did not assert any constitutional claims against the private defendants, and he does not contend that any of the private defendants acted under color of law for the purpose of establishing liability under § 1983.

The private defendants move for summary judgment on all of Stabenow's claims against them. Stabenow's opposition brief discusses only three claims against the private defendants: (1) negligent misrepresentation; (2) negligence; and (3) negligent hiring, training and supervision. He doesn't oppose dismissal of the other claims, so the court will grant summary judgment to the private defendants on Stabenow's claims for malicious prosecution, abuse of process, intentional misrepresentation, and negligent and intentional infliction of emotional distress.

## A. Negligent misrepresentation

Stabenow's misrepresentation claim is based on the allegation in the complaint that "Defendants made representations to the police and/or prosecution that Mr. Stabenow committed crimes of disorderly conduct, resisting arrest, and obstructing an officer." Dkt. 1, ¶ 141. But one of the elements of a misrepresentation claim is that the defendant made the misrepresentation to the *plaintiff. See Malzewski v. Rapkin*, 2006 WI App 183, ¶ 20, 296 Wis. 2d 98, 113, 723 N.W.2d 156, 163. Stabenow doesn't allege that any of the defendants made misrepresentations to him, and he didn't respond to the private defendants' argument that his misrepresentation claim fails for that reason.

Stabenow relies solely on *Bednarz v. Lovald*, No. 15-C-0458, 2016 WL 6304705 (E.D. Wis. Oct. 27, 2016), to support his misrepresentation claim. But it isn't clear why. As defendants point out, *Bednarz* didn't involve a misrepresentation claim. Rather, the plaintiffs brought claims against a car repossession company under the Fair Debt Collection Practices Act, the Wisconsin Consumer Act, and 42 U.S.C. § 1983. Stabenow isn't asserting any of those claims against the private defendants in this case, so *Bednarz* isn't helpful. The court will dismiss the negligent misrepresentation claim.

## B. Negligence

A defendant may be held liable for negligence if he or she fails to exercise ordinary care and that failure harms the plaintiff. *See Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 30, 291 Wis. 2d 283, 306, 717 N.W.2d 17, 29. The court understands Stabenow to contend that the private defendants were negligent by chasing him with their tow truck at high speeds, failing to cease their repossession efforts when Gums objected, and falsely telling the police that they

were being threatened.[5] In the absence of those actions, Stabenow says that he wouldn't have suffered any of his injuries from March 14.

The private defendants object to the negligence claim on the ground that Stabenow didn't assert it in his complaint. It's true that Stabenow's complaint doesn't list negligence as a separate claim. But a plaintiff isn't required to include legal theories in his complaint. *See Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error."). The important question is whether the complaint provides notice of the *facts* underlying the claim. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). In this case, the complaint includes all the allegations that form the basis of Stabenow's negligence claim, *see* Dkt 1, ¶¶ 20–32, and the private defendants don't identify any unfair prejudice that considering the negligence claim would cause. So the court declines to dismiss the negligence claim on the ground that Stabenow failed to expressly assert a separate negligence count in the complaint.

On the merits, the private defendants don't deny that the conduct Stabenow challenges was negligent. They raise only one issue, which is that their actions weren't a proximate cause of Stabenow's injuries. Specifically, they say that officers "had an opportunity to assess the situation on their own, investigate the scene, and gather information from witnesses in the driveway regarding the credibility of any information reported to them from the . . . dispatcher," and the officers' conduct is an "intervening or superseding cause" that broke the causal chain. Dkt. 64, at 17–18.

---

[5] This conduct involves Matijevic and Bernitt only, but both sides assume that Bonafide Recovery is vicariously liable for Matijevic and Bernitt's conduct, so the court has done the same.

In Wisconsin, causation has two components, cause-in-fact and proximate cause. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 660, 666 (1979). Conduct is a cause-in-fact if it is a "substantial factor" in bringing about the plaintiff's injuries. *Id.* The private defendants don't challenge Stabenow's contention that a reasonable jury could find that their conduct was a cause-in-fact of his injuries.

Proximate cause is a collection of six public policy factors that are determined by the court. *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.,* 2004 WI 62, ¶ 10, 272 Wis. 2d 46, 57, 680 N.W.2d 345, 351. One of these factors is whether the plaintiff's injury is too remote from the defendant's causal negligence. *Cefalu v. Continental Western Ins. Co.*, 2005 WI App 187, ¶¶20-21, 285 Wis. 2d 766, 703 N.W.2d 743.[6] "[T]he intervening or superseding cause defense is subsumed within the" remoteness factor. *See Allen v. Am. Cyanamid*, No. 11-cv-55, — F. Supp. 3d —, 2021 WL 1092800, at *1 (E.D. Wis. Mar. 22, 2021). "A cause is superseding when it is a cause of independent origin that was not foreseeable." *Kemper v. Deutsche Bank AG,* 911 F.3d 383, 393 (7th Cir. 2018) (internal quotation marks omitted).

The private defendants' argument regarding the intervening or superseding cause overlooks Stabenow's allegations that Matijevic and Bernitt's conduct harmed him even before the police were involved. Specifically, he alleges that he experienced emotional distress as a result of them chasing him at high speeds with their tow truck. In any event, as noted in *Allen*, the general rule in Wisconsin courts is to defer consideration of superseding cause and other

---

[6] The other five factors are: (1) the injury is too wholly out of proportion to the tortfeasor's culpability; (2) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm; (3) allowing recovery would place too unreasonable a burden on the tortfeasor; (4) allowing recovery would be too likely to open the way for fraudulent claims; or (5) allowing recovery would enter a field that has no sensible or just stopping point. *Cefalu*, 2005 WI App 187, at ¶ 12.

public policy factors until after trial. 2021 WL 1092800, at *1 (citing *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶ 166 n. 54, 285 Wis. 2d 236, 701 N.W.2d 523, and *Alvarado v. Sersch*, 2003 WI 55, ¶ 20, 262 Wis. 2d 74, 662 N.W.2d 350.). The private defendants don't identify any reasons for departing from the general rule in this case, so the court will deny their motion for summary judgment on the negligence claim. If Stabenow prevails on this claim at trial, the private defendants may renew their argument in a post-verdict motion.

## C. Negligent supervision, hiring, and training

Stabenow says that "Bonafide was negligent in training and supervising its employees because it had tolerated that wrongful conduct by its employees and actually encouraged employees to call the police and had taken no action to stop a continuation of the conduct." Dkt. 83, at 55–56. That one sentence is Stabenow's entire argument on why he believes that Bonafide Recovery was negligent. Stabenow seems to be alleging three types of negligence in that sentence: (1) tolerating wrongful conduct by employees in the past; (2) encouraging employees to call the police; and (3) failing to take action after March 14 to prevent it from happening again.

Stabenow doesn't explain how any of his theories support a claim for negligent supervision, hiring, or training. As for tolerating wrongful conduct, Stabenow doesn't identify any previous instances of wrongful conduct that Bonafide Recovery tolerated. As for encouraging employees to call the police, Stabenow cites testimony from Bonafide Recovery's owner, who said, "I do instruct [my employees] at any given time, whether it be a vehicle I'm repossessing or any other vehicle, if they see someone breaking the law, to report it." Dkt. 89 (Hughes Dep. 49:17–20). Stabenow doesn't explain why it would be negligent for Bonafide Recovery to instruct its employees to call the police when they observe violations of the law,

and the court discerns no basis for negligence in that context. As for failing to discipline Matijevic and Bernitt, that occurred after the events at issue in this case, so it could not have been a cause of Stabenow's injuries.

There may be other grounds for finding Bonafide Recovery to be negligent in this case, but Stabenow doesn't identify any. So the court will grant summary judgment to Bonafide Recovery on this claim.

### III. "SUBROGATED PLAINTIFF" SACRED HEART HOSPITAL

One final matter requires attention. Stabenow's complaint identifies Sacred Heart Hospital as a "subrogated plaintiff." But Sacred Heart didn't sign the complaint and has not made an appearance in this case. More fundamentally, the Federal Rules of Civil Procedure don't recognize a "subrogated plaintiff" as a type of party that may join a case. It may be that Sacred Heart provided medical care to Stabenow, and that Stabenow named Sacred Heart as a party in accordance with Wis. Stat. § 803.03(2). But federal procedural law governs proceedings in federal court, so § 803.03(2) doesn't apply. So the court will give Stabenow an opportunity to show cause why Sacred Heart should not be dismissed from the case.

### CONCLUSION

The court will allow two sets of claims to proceed to trial: (1) the excessive force claims related to the officers' conduct after the initial seizure; and (2) the negligence claim against the private defendants. The court will grant defendants' summary judgment motions on all other claims.

## ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants City of Eau Claire, Michael McClain, Wayne Bjorkman, Ellen Schroeder, Brenna Gasper, and Mitchell Hunsley ("the city defendants"), Dkt. 48, is DENIED on the following claims under the Fourth Amendment:

    (a) McClain used excessive force against Chester Stabenow by punching him in the face;

    (b) Bjorkman, Schroeder, and Hunsley failed to intervene when McClain punched Stabenow;

    (c) Bjorkman, Schroeder, McClain, and Hunsley used excessive force by slamming Stabenow into the hood of trunk;

    (d) Bjorkman, Schroeder, McClain, and Hunsley used excessive force when they brought Stabenow to the ground; and

    (e) Bjorkman, Schroeder, McClain, Hunsley, and Gasper used excessive force when they restrained Stabenow on the ground.

2. The city defendants' summary judgment motion, Dkt.48, is GRANTED in all other respects, and the City of Eau Claire is DISMISSED from the case.

3. The motion for summary judgment filed by defendants Bonafide Recovery and Transport, LLC, Michael Matijevic, and Carrie Bernitt ("the private defendants"), Dkt. 63, is DENIED on Stabenow's negligence claim.

4. The private defendants' motion for summary judgment, Dkt. 63, is GRANTED in all other respects.

5. Stabenow may have until July 9, 2021, to show cause why Sacred Heart Hospital should not be dismissed from this case.

Entered July 1, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge